**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Holly M. B., | No. CV18-8090-PCT-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Nancy A. Berryhill, Acting Commissioner of Social Security Administration, | |
| Defendant. | |

     Plaintiff seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security which denied her disability insurance benefits under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. For reasons set forth below, the Court will vacate the Commissioner's decision and remand for an award of benefits.

## I.  Background.

    Plaintiff is a 52-year-old woman with a ninth-grade education. A.R. 41-42. She previously worked as a machine operator, personal trainer, cleaner, and floor attendant. A.R. 57-58. Plaintiff applied for disability benefits on August 22, 2011, alleging disability beginning July 12, 2009. A.R. 39. Plaintiff later amended her alleged onset date to August 1, 2011. A.R. 15, 39. On September 12, 2016, Plaintiff and a vocational expert appeared and testified at a hearing before an ALJ. A.R. 37-117. On January 13, 2017, the ALJ issued an unfavorable decision, finding Plaintiff not disabled within the meaning of

the Social Security Act. A.R. 15-30. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on March 1, 2018. A.R. 1-3.

## II.    Legal Standard.

The Court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (internal citations and quotation marks omitted). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the Court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

## III.    The ALJ's Five-Step Evaluation Process.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step

two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2014, and that she had not engaged in substantial gainful activity during the period from her amended alleged onset date of August 1, 2011 through September 30, 2014. A.R. 17-18. At step two, the ALJ found that Plaintiff had the following severe impairments: obesity; fibromyalgia; rheumatoid arthritis; Still's disease; arthritis of the knee; degenerative disc disease of the lumbar and cervical spine; bipolar disorder; mood disorder; and polysubstance dependence in reported remission. A.R. 18. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment. A.R 19. At step four, the ALJ found that Plaintiff could not perform past relevant work, but that Plaintiff had the RFC to perform sedentary work. A.R. 21, 28. The ALJ found that Plaintiff

> can occasionally climb ramps or stairs, crouch, kneel, and crawl, can never climb ladders, ropes, or scaffolds, and can frequently balance. The claimant is limited to occasional exposure to dangerous machinery with moving mechanical parts or unprotected heights that are high or exposed. The claimant is limited to work that can be learned by demonstration within 30

- 3 -

days, and can occasionally interact with the public, coworkers, and supervisors. She can work in the vicinity of others[.]

A.R. 21.

**IV.    Analysis.**

Plaintiff argues the ALJ's decision is defective for two reasons: (1) the ALJ erred in rejecting opinions by Plaintiff's treating physicians, Dr. Olubi and Dr. Naranja, and instead giving significant weight to the one-time examiner, Dr. Gomez, and the two consultative examiners; and (2) the ALJ rejected Plaintiff's symptom testimony without specific, clear, and convincing reasons supported by substantial evidence. Doc. 14 at 1-2.

**A.    Medical Opinion Evidence.**

**1.    Legal Standard.**

A physician's opinion may be a treating source, examining source, or non-examining source. *See* 20 C.F.R. § 404.1527 (evaluating opinion evidence for claims filed before March 2017); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician is one who provides or has provided the claimant with medical treatment or evaluation, or who has an ongoing treatment relationship with the claimant. *Id.* at § 404.1527(a)(2). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining physician. *See Andrews*, 53 F.3d at 1040-41; *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (factors ALJ considers when evaluating opinion evidence). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). "[I]f the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751.

- 4 -

"The ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22. The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and does not give significance to a statement by a medical source that the claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d).

### 2. Dr. Olubi.

The ALJ gave Dr. Olubi's opinion little weight. A.R. 26. Because Dr. Olubi is a treating physician whose opinion is contradicted by another doctor, the ALJ could discount his opinion for specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830-31.

On August 1, 2013, Dr. Olubi completed a check-box assessment. A.R. 870-73. He opined that, in an eight-hour work day, Plaintiff could sit for one hour; stand and walk for two hours; needs to change positions at least every 15 minutes; needs a ten-minute stretching break every 45 minutes; can frequently lift and carry ten pounds and occasionally lift and carry 11-20 pounds; can never lift and carry more than 21 pounds; and never stoop, squat, crawl, climb, or reach. Dr. Olubi opined that Plaintiff can frequently grasp and manipulate with both hands and occasionally push and pull with both hands; cannot use feet for repetitive movements; and has a total restriction around unprotected heights, moving machinery, occupational driving, exposure to dust fumes, gases, and marked changes in temperature or humidity. A.R. 870-71.

Dr. Olubi also completed a Fibromyalgia assessment and indicated that Plaintiff has had the following symptoms since July 2010: generalized pain and tenderness, fatigue, presence of tender points, irritable bowel syndrome, sleep disorder or waking un-refreshed, memory impairments, anxiety, and depression. A.R. 872. Dr. Olubi's opinion indicated that Plaintiff's limitations would cause her to be off task more than 30% of an eight-hour work day, absent from work four days a month, and 50% less efficient than an average worker on a sustained basis. A.R. 873

The ALJ identified several reasons for giving the opinion little weight: (1) it was provided as a check-box form without explanation or specific citation for the limitations asserted; (2) it was an extreme opinion and unsupported by Dr. Olubi's own clinical findings; (3) Dr. Olubi is a general practitioner, not a specialist; and (4) it appears to be based significantly on Plaintiff's subjective complaints. A.R. 26.

### a. First Reason.

The Ninth Circuit has provided conflicting guidance on the effect of check-box forms. In *Molina v. Astrue*, 674 F.3d 1104 (9th Cir. 2012), the court stated that an "ALJ may permissibly reject check-off reports that [do] not contain any explanation of the bases of their conclusions." *Id.* at 1111-12 (citation and quotation omitted). More recently, and without so much as citing *Molina*, the Ninth Circuit stated that ALJs may not "reject the responses of a treating physician without specific and legitimate reasons for doing so, even where those responses were provided on a 'check-the-box' form, were not accompanied by comments, and did not indicate to the ALJ the basis for the physician's answers." *Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017).

A rational explanation of the correct approach was provided in *Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014):

> An ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings. Indeed, Dr. Riley's assessments are of the "check-box" form and contain almost no detail or explanation. But the record supports Dr. Riley's opinions because they are consistent both with Claimant's testimony at the hearing and with Dr. Riley's own extensive treatment notes which, as discussed above, the ALJ largely overlooked. The ALJ clearly erred in his assessment of the medical evidence, overlooking nearly a dozen reports related to head, neck, and back pain.

*Id.* at 1140 (quotation marks and citations omitted).

The Court does not entirely agree with the ALJ's conclusion that Dr. Olubi's opinion was "without explanation or specific citation for the limitations provided." A.R. 26. Dr. Olubi described Plaintiff's limitations on the first page of the form, stating

- 6 -

that she needs to change positions every 15 minutes and to take a ten-minute stretching break every 45 minutes (A.R. 870), and provided some explanation at the end of the form:

> P[atien]t suffered [motor vehicle accident] in 2010 [illegible] cervical disc herniation with radiculopathy and also clinical depression and anxiety. She also has a [history] of juvenile rheumatoid arthritis and fibromyalgia and she is on multiple medications to [illegible] her pain, depression and anxiety which overall affect her level of functioning.

A.R. 873.

True, the check-box from included no specific citations to the record, but the ALJ's cited exhibit – 13F – includes not only Dr. Olubi's two assessments from August 2013, but also his treatment notes and tests from six examinations of Plaintiff from March to August 2013. A.R. 874-92. As explained in some detail in the next section, Dr. Olubi's treatment notes support his check-box opinion. Thus, although his opinion was conclusory and brief, it was not unsupported by the record as a whole, and the form of the opinion therefore is not a legitimate basis for discounting it. *Burrell*, 775 F.3d at 1140.

### b. Second Reason.

The ALJ stated that Dr. Olubi's opinion was extreme and unsupported by his own clinical findings, "including the claimant's presentation in no acute distress, with normal ambulation, and normal physical examination findings." A.R. 26 (citing A.R. 876, 889). In support, the ALJ cited two pages out of Plaintiff's six-month treatment history with Dr. Olubi. The ALJ also stated that "physical examinations of the claimant by the doctor were largely benign," and that there were "no clinical findings supportive of the manipulative restrictions opined." A.R. 26.

The first cited page is from the record of Plaintiff's August 2013 visit with Dr. Olubi. *See* A.R. 874-77. As the ALJ stated, the physical examination revealed normal ambulation and no acute distress. A.R. 876. But the examination hardly showed Plaintiff to be in normal physical health. It revealed that Plaintiff had neck pain with motion; limited range of motion in all neck planes; tenderness and limited range of motion in Plaintiff's joints, bones, and muscles; antalgic gait; and moderate limitation for flexion in Plaintiff's

back. *Id.* Treatment notes indicated that Plaintiff reported fatigue, muscle aches, joint and back pain, weakness, and depression. A.R. 875.

The second page cited by the ALJ is from Plaintiff's May 2013 visit with Dr. Olubi. *See* A.R. 886-91. That visit also showed normal ambulation, as the ALJ noted, but found an antalgic gait and moderate limitation for flexion in Plaintiff's back. A.R. 887-88.

Plaintiff's treatment history with Dr. Olubi also reflects that in July she reported moderate and worsening lumbar back pain that interfered with sleep and work (A.R. 879), and her physical examination showed an antalgic gait and moderate limitation for flexion in her back (A.R. 880). In June, Plaintiff reported the same lumbar pain and also that sitting, walking, moving, bending over, and twisting aggravated her pain. A.R. 883. The June physical examination revealed an antalgic gait and limitations in the range of motion in Plaintiff's back. A.R. 884. And in April, Plaintiff reported fatigue, depression, breast pain and tenderness, but a full physical examination was not included. A.R. 983-93. The records show that Plaintiff was continuously prescribed as many as ten medications to treat her pain, anxiety, and other conditions (*see* A.R. 890), and that she has a documented history of unspecified hypothyroidism, obesity, bipolar I disorder, depression, backache, and myalgia and myositis (A.R. 874).

The Court agrees with the ALJ that Dr. Olubi opined that Plaintiff had several serious limitations, including his opinion that Plaintiff could sit for only one hour in a day, stand and walk for two hours, need to change positions every 15 minutes, would be off task for more than 30% of a work day, and would be 50% less efficient than an average worker. A.R. 873. But the ALJ impermissibly selected normal findings from Plaintiff's treatment history, while failing to address the six months of findings that supported Dr. Olubi's opinion. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). Dr. Olubi's assessment of Plaintiff's fibromyalgia symptoms seems generally supported by his clinical findings about her conditions and reported pain. Physical examinations support her symptoms of pain and tenderness. And Plaintiff's prescribed medications indicate ongoing treatment for anxiety and depression. Dr. Olubi's examinations revealed continuous aches

and pain, tenderness, morbid obesity, fatigue, antalgic gait, depression, abnormal affect, and limited ranges of motion that could all support such limitations, as well as restrictions on weight that Plaintiff could lift and carry and with what frequency.

The ALJ did not indicate which manipulative restrictions she found unsupported by Dr. Olubi's opinion. Indeed, Dr. Olubi opined that Plaintiff could frequently grasp and manipulate with both hands and occasionally push and pull with both hands.

The ALJ offered no specific reasons for concluding that Dr. Olubi's opinion was extreme or that Plaintiff's documented history failed to support his conclusions. Treating physician opinions are entitled to deference, and ALJs cannot usurp the role of doctors when interpreting the medical evidence and weighing treating medical sources. *Trevizo v. Berryhill*, 871 F.3d 664, 683 (9th Cir. 2017) ("The ALJ . . . reject[ed] the informed medical opinion of [Plaintiff's] primary treating physician and instead improperly substituted her judgment for that of the doctor."); *Garrison v. Colvin*, 759 F.3d 995, 1013-14 (9th Cir. 2014) (reiterating that "[t]he ALJ must set forth his own interpretations and explain why they, rather than the doctors', are correct"); *see also Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) ("As this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). The ALJ erred in finding that Dr. Olubi's opinion was extreme and unsupported by his own clinical findings.

### c.  Third Reason.

The ALJ noted that Dr. Olubi is a general practitioner, not a specialist. A.R. 26. Defendant does not appear to defend this rationale. *See* Doc. 16 at 8-10. While specialization in the relevant field is a factor in determining a medical opinion's weight, it is not controlling. *See* 20 C.F.R. § 404.1527(c)(5). The ALJ should also consider the "kinds and extent of examinations and testing the [treating] source has performed or ordered from specialists and independent laboratories." § 404.1527(c)(2)(ii). In discounting Dr. Olubi's opinion for lack of specialization, the ALJ failed to discuss the examinations and tests on which he relied. A.R. 26. This is not a legitimate reason.

### d.    Fourth Reason.

The ALJ stated that Dr. Olubi's opinion appeared "to be based significantly upon the claimant's subjective complaints." A.R. 26. The ALJ further stated:

> For example, the claimant presented on August of 2013 for "disability paper work". She complained that she was "limited by pain in the back of her head and neck from stills disease . . . is clinically depressed. She used to be very active[,] operated a non-profit gym[,] but has been unable to work since her [motor vehicle accident]."

A.R. 26 (citing A.R. 874).

A physician's reliance on a claimant's "subjective complaints hardly undermines his opinion as to her functional limitations, as a patient's report of complaints, or history, is an essential diagnostic tool." *Valdez-Canez v. Colvin*, No. CV-16-02780-PHX-DGC, 2017 WL 2351664, at *5 (D. Ariz. May 31, 2017) (citing *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003) (internal citations and quotations omitted)). But "[i]f a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence," and "the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim*, 763 F.3d at 1162 (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)).

An ALJ must "explain how she reached the conclusion that a physician's opinion was largely based on self-reports." *Valdez-Canez*, 2017 WL 2351664, at *5 (internal quotation marks omitted). Here, the ALJ merely asserted that Dr. Olubi's opinion relied on Plaintiff's subjective complaints. The ALJ restated some of Plaintiff's reported complaints from the August 2013 visit, but failed to identify which of Dr. Olubi's findings this conclusion relates to – out of nearly six months of findings. Moreover, as noted above, Dr. Olubi's opinion is supported by consistent reported symptoms by Plaintiff, as well as documented prescribed medications and Dr. Olubi's own physical examinations of Plaintiff during their treating relationship. This is not a specific and legitimate reason to discredit Dr. Olubi's opinion.

### 3. Dr. Naranja.

The ALJ gave Dr. Naranja's opinion little weight. A.R. 26. Because Dr. Naranja is a treating physician whose opinion is contradicted by another doctor, the ALJ could discount his opinion for specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830-31.

On June 25, 2015, Dr. Naranja completed a check-box assessment. A.R. 1072-73. He opined that Plaintiff, with minimal or no limitation, could understand and remember short, simple instructions; carry out short, simple instructions; and make judgments on simple work-related decisions. A.R. 1072. But in the following activities, Dr. Naranja opined that Plaintiff would have serious limitations and would be off task 11 to 15% of the time: understanding and remembering detailed instructions; interacting appropriately with the public, supervisors, and co-workers; responding appropriately to work pressures in a usual work setting; and responding appropriately to changes in a routine work setting. *Id.* Based on Plaintiff's limitations, Dr. Naranja opined that in an eight-hour work day, Plaintiff would be off task more than 30% of the time, absent five days or more in a month, unable to complete an eight-hour work day on five days or more in a month, and 50% less efficient than an average worker. A.R. 1073.

The ALJ identified two reasons for giving the opinion little weight: it was (1) provided on a check-box form without explanation or citations; and (2) inconsistent with the psychological consultative examination. A.R. 26.[1]

#### a. First Reason.

As noted above, an ALJ may discredit a treating physician's opinions that is conclusory, brief, and unsupported by the record as a whole or by objective medical findings. *Burrell*, 775 F.3d at 1140. Dr. Naranja's opinion is conclusory and brief, but the

---

[1] The ALJ also stated that Dr. Naranja's opinion was inconsistent with the record, "particularly the claimant's ability to perform activities of daily living and interact with others on a limited basis." A.R. 26. The ALJ cited no conflicting evidence. The Court will consider this reason in determining whether the ALJ properly discredited Plaintiff's symptom testimony.

ALJ did not find that it is unsupported by the record or objective medical findings. The record includes Dr. Naranja's supporting treatment notes from April 11, 2013 through June 23, 2016. A.R. 1444-73.

For example, in December 2013, Plaintiff reported trouble sleeping, depression, suspicious and paranoid thoughts, and hearing voices. A.R. 1458. In March and June 2014, Plaintiff complained of depression and psychotic symptoms, she believed people were talking behind her back, and had been having flashbacks of past physical abuse (A.R. 1454); she also struggled with bad dreams and nightmares related to past abuse, and occasions where she heard her mother's angry voice (A.R. 1456).

In March and April 2015, Plaintiff had moderate depression and anxiety, was tearful, had memory disturbances, and was chronically tired (A.R. 1452); she also had fatigue, severe depression, moderate anxiety, and demonstrated a flat affect in therapy (A.R. 1451). June 2015 therapy notes indicate memory disturbances, insomnia, and that Plaintiff demonstrated guilt and self-reproach, flat affect, and moderate depression, anxiety, and anger. A.R. 1450. In March and June 2016, Plaintiff noted continued depressive episodes (A.R. 1444), sleeping problems, and hearing voices (A.R. 1446).

Dr. Naranja's treatment notes about Plaintiff – including sleep problems, depression, anxiety, flashbacks, self-reproach, flat affect, paranoia, and suspicion about what people might think about her – support his opinion that she would have serious limitations understanding and remembering detailed instructions; interacting appropriately with others; responding appropriately to work pressures and changes in a work setting; and his opinion about her absences based on these limitations.

### b. Second Reason.

The ALJ found that Dr. Naranja's opinion was inconsistent with the psychological consultative examination by Dr. Doss. A.R. 26 (citing A.R. 793-98). She further noted that "on examination of the claimant, the doctor failed to note [that Plaintiff] was responding to internal stimuli." A.R. 26.

"When an examining physician provides 'independent clinical findings that differ from the findings of the treating physician,' such findings are 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citation omitted). "Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, or (2) findings based on objective medical tests that the treating physician has not herself considered." *Id.* (citation omitted). "Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is still entitled to deference." *Id.* at 632-33 (citing S.S.R. 96–2p at 1, 4 ("A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected."); 61 Fed. Reg. at 34,491).

Dr. Doss diagnosed Plaintiff with a mood disorder due to chronic pain with depressive features. A.R. 793. She found that Plaintiff performed adequately on the Mini Mental Status Exam-II Edition ("MMSE-II") in the Low Average range; has periodic anxiety, but not of diagnosable proportions; has no problematic temper; and exhibited adequate social and communication skills. A.R. 793-94, 796. Dr. Doss opined that Plaintiff might have higher cognitive abilities than she scored, and found that Plaintiff had difficulty with fund of information, common sense, and abstract reasoning, but no evident gross cognitive deficits. A.R. 796. Dr. Doss's examination occurred on a single day in September 2012. It consisted of the MMSE-II, a psychological interview, and a substance use history. *See* A.R. 795. Dr. Doss's report describes Plaintiff's family history, education and vocation history, personal history, daily activities, and the doctor's observations.

In his most recent treatment notes from March and June 2016, Dr. Naranja indicated Plaintiff's diagnoses as bipolar disorder with depressive episodes and psychotic features; post-traumatic stress disorder; insomnia; generalized anxiety disorder; and panic disorder. A.R. 1444-46. Dr. Naranja's treatment notes reflect visits with Plaintiff beginning in April 2013. A.R. 1444-73. Plaintiff appears to have attended therapy (A.R. 1450-52) and been treated with various prescribed medications (*e.g.*, A.R. 1448-55). On Plaintiff's first visit on April 11, 2013, the notes describe Plaintiff's past medical history, her family and

personal history, her substance abuse history, education and employment history. A.R. 1468-73. Dr. Naranja also administered a mood disorder questionnaire and attention deficit disorder screening. A.R. 1474.

There appears to be both overlap and differences between the diagnoses and methodologies of the two doctors, none of which the ALJ discussed. The ALJ not explain how Dr. Doss provided independent clinical findings such that her examination could constitute substantial evidence supporting the discrediting of Dr. Naranja's opinion. And she did not otherwise discuss differences in their diagnoses, methodologies, qualifications, or any other reasons for crediting a one-time snapshot of Plaintiff's condition by Dr. Doss over the three-year treating assessment by Dr. Naranja. The ALJ could permissibly find Dr. Doss's examination probative and persuasive as she did, but the partial weight she gave Dr. Doss's opinion does not require discrediting Dr. Naranja's. Inconsistency between the two opinions alone is insufficient. *Orn*, 495 F.3d at 632-33.

**B.      Evaluation of Plaintiff's Symptom Testimony.**

In evaluating a claimant's symptom testimony, the ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged. *Garrison*, 759 F.3d at 1014. The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptoms she has alleged, only that it could reasonably have caused some degree of the symptoms. *Id.* Second, if there is no evidence of malingering, the ALJ may reject the claimant's symptom testimony only by giving specific, clear, and convincing reasons. *Id.* at 1015.

At the hearing, Plaintiff testified as follows. As a child, a private tutor would come to her house two hours each day because of her arthritis. A.R. 42. She was placed in special education for a while, but she stopped attending school in the ninth grade after she was admitted to the suicide ward and her depression escalated following familial sexual abuse. A.R. 43. Her anxiety and depression have not improved with treatment; they have worsened. A.R. 47. She has panic attacks, prefers not to associate with people, and has

1  bad dreams and trouble sleeping, in part due to her childhood abuse.  A.R. 47-48.  She has

2  been in the hospital several times for suicide attempts and breakdowns.  A.R. 48.

3  Other than negligible earnings from brief work at a casino, she has not worked since

4  2011 due to chronic pain.  She spends most of her time in bed, does not leave her house

5  much (A.R. 44), and has not gone to the gym since 2011 (A.R. 51).  She feels the most

6  pain in her legs, neck, shoulders, and lower back.  A.R. 49.  She has fibromyalgia and

7  Still's disease, and has had rheumatoid arthritis since she was seven years old.  *Id.*  She

8  used to wear braces on her legs and hands because of the arthritis, and she continues to feel

9  pain in her hand joints.  A.R. 52.  This pain interferes with her ability to pick up and hold

10  objects.  *Id.*  Her arthritis causes her feet and legs to swell when she is on her feet for too

11  long, and that she must elevate her legs three times a day to alleviate the pain.  A.R. 49-50,

12  54.  She feels pain in her spine, neck, and hips, as well.  A.R. 52-52.  Even with her

13  medications, she rates her pain as nine or ten on a scale of one to ten.  A.R. 53.

14  Plaintiff estimated that she can sit for 30 minutes before she needs to change

15  positions, and can walk for only 15 minutes.  A.R. 53.  She cannot stand in one place, and

16  must move every hour when she sleeps.  A.R. 54.  Plaintiff uses a cane, and experiences

17  frequent diarrhea, stomach pain, joint inflammation, temperature changes, welts on her

18  legs, poor concentration, falling, and fatigue.  A.R. 54-56.

19  The ALJ first found that Plaintiff's medically determinable impairments could

20  reasonably be expected to cause these alleged symptoms.  A.R. 22.  The ALJ then found

21  that Plaintiff's statements regarding the intensity, persistence, and limiting effects of the

22  symptoms were not entirely consistent with the medical evidence and other evidence in the

23  record.  *Id.*  The ALJ gave several reasons: (1) Plaintiff's level of daily activity was

24  inconsistent with her alleged limitations; (2) Plaintiff reported improved functioning and

25  lessened symptoms with treatment; and (3) Plaintiff's treatment history and the objective

26  evidence are inconsistent with her alleged symptoms.  A.R. 22-23.

27

28

## 1.     First Reason: Daily Activity.

"In evaluating the claimant's testimony . . . the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). "While a claimant need not 'vegetate in a dark room' in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.* at 1113 (citations omitted).

"With respect to daily activities, [the Ninth Circuit] had held that if a claimant 'is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.'" *Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001) (citation omitted). But "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Id.* at 1050.

The ALJ cited the following activities by Plaintiff:

> The claimant lives alone . . . . She independently completes activities of self-care, including grooming, dressing, and bathing . . . [and] is able to prepare simple meals. The claimant cares for a household pet[,] . . . drives, and is able to shop in stores for necessities when required. She completes some simple household chores, but receives assistance from her husband and a housekeeper. The claimant is largely independent in activities of daily living, but reports increased time is necessary to complete tasks. . . . [T]he claimant's level of activity is minimally limited, and cannot be reconciled with the considerable severity alleged. Many of the activities the claimant performs are similar to activities performed in many occupations.

A.R. 22 (citations omitted).

Plaintiff argues that the ALJ did not make the required finding – and that the record does not support – that Plaintiff spends a substantial part of a typical day in activities inconsistent with the disabling limitations she claims. Doc. 14 at 24. The Court agrees.

Plaintiff testified that during an eight-hour day she usually stays in bed for most of the day and does little. A.R. 48. She sometimes will go without meals because she is in so much pain. A.R. 48-49. The ALJ's cited exhibit – 9E – corroborates Plaintiff's testimony rather than contradicting it. *See* A.R. 384-92. The exhibit is Plaintiff's self-completed function report from July 2012, in which she describes difficulty standing, walking, or being social. A.R. 384. Her typical day includes getting up, taking pills, letting her dog out, watching television, and then going back to bed or going to the pool for an hour, making a television-dinner or protein shake, then "star[ing] into space" much of the time and trying not to think about her pain. A.R. 385.

Caring for Plaintiff's pet includes letting the pet out and giving her food and water. A.R. 385. Plaintiff did not report walking or playing with her dog. *See id.* Plaintiff's personal grooming habits further reflect her limitations. She reported difficulty dressing because it is hard for her to move anything over her head; she showers in a chair; and she does not shave. A.R. 386. Plaintiff needs reminders to take care of her personal needs and grooming because she might go days without showering or grooming. She reported that her cooking habits have changed due to her pain; she has not prepared a meal in a long time; and she usually eats frozen food, bag salads, or protein shakes. A.R. 386. Plaintiff reported that she does not go outside often, and only shops for food every two to three weeks. A.R. 387. She pays a housekeeper to come and reported that she "can go day[s] or week[s] without doing anything." A.R. 387.

The ALJ's other cited exhibit – 7F – includes examination notes from August 2012, in which Plaintiff's reported activities are more general but remain consistent with her self-reported limitations. A.R. 786-91. She complained of "significant impact on activities of daily living[,] even with sitting." A.R. 787. Although the record notes that Plaintiff sweeps, vacuums, and washes dishes, it does not note with what frequency. *Id.* Moreover,

the record notes that Plaintiff can ambulate only "one to two hours per 24 hours," and that she "is confined to bed and gets approximately eight to nine hours of sleep per night." *Id.*

The ALJ's summary of Plaintiff's daily activities as "minimally limited" seriously mischaracterizes her daily routine. The ALJ cited no evidence showing that Plaintiff's few activities take up a substantial part of her day. *Vertigan*, 260 F.3d at 1049. To the contrary, the ALJ's cited exhibits reflect minimal daily and reveal that Plaintiff sometimes omits activities such as grooming and preparing meals. The cited evidence reflects Plaintiff's serious difficulty with the reported activities, and suggests that Plaintiff spends a substantial portion of her day lying in bed or watching television, not engaging in activities that "are similar to [those] performed in many occupations." A.R. 22. This is not a clear and convincing reason to discredit Plaintiff's symptom testimony.

## 2. Second Reason: Reported Improvement.

The ALJ stated that Plaintiff reported "improved functioning and lessened symptoms with treatment" related to cervical injections, her left knee arthroscopic surgery, and medication. A.R. 23. The ALJ found that "[t]his tends to show that treatment has been at least somewhat successful in relieving [Plaintiff's] pain, contrary to testimony." *Id.* The ALJ cited several exhibits and pages of exhibits in support. *Id.*

As the ALJ noted, in early 2011 Plaintiff reported continuous neck, back, and clavicle pain, usually spreading into her arm and hand. A.R. 858-61 (12F). In May 2011, Plaintiff reported that recent cervical injections had "helped quite a bit" with her pain. A.R. 938 (14F). But in May 2013, Plaintiff reported severe low back pain, and an examination revealed reduced range of motion, swelling, inflammation, joint pain and tissue tenderness, muscle spasm, and asymmetry of musculature. A.R. 861 (12F).

On March 25, 2013, the ALJ's cited record notes that Plaintiff "[s]tates she is doing OK on her current meds." A.R. 892 (13F). But that note is in an exhibit with six months of Dr. Olubi's treatment notes and records, which, as discussed above, include continuous reported symptoms of pain and examinations that revealed ongoing limitations.

The ALJ noted that on June 2014, Plaintiff reported she was "doing better" after her knee surgery and that her pain was a 3/10. A.R. 1090 (20F). But five months later, Plaintiff visited the same facility complaining of hand, wrist, and foot pain. A.R. 1088.

The ALJ also cited several other records from before Plaintiff's alleged onset of disability in August 2011: one from August 2010 where Plaintiff's doctor noted that Plaintiff's sleep was improving after a medication change, although her mood was still depressed and her energy low. A.R. 430 (1F). The next month, the same doctor noted that Plaintiff "still report[ed] chronic pain and wanted to know if she could have more narcotics." A.R. 432. The ALJ cited another record from September 2010, which noted that Plaintiff was "intensely focused on . . . chronic pain to a degree it was a major limitation to her involvement with the entire therapy program." A.R. 489 (2F). The record further notes that even with "[l]ong-acting pain medication . . . she continued to describe pain level at discharge as 6 on a scale 0-10." *Id.* Plaintiff reported neck, hand, and foot pain, swollen feet, and fevers and rashes. A.R. 538 (2F); A.R. 955 (14F).

In October 2010, Plaintiff reported better sleep and shoulder pain (A.R. 569 (3F); A.R. 701 (6F)); improved mood and better coping skills (A.R. 584); "pain management [was] better" (A.R. 589); but her clavicle pain "flar[ed] up . . . to the point where she c[ould] hardly do anything" (A.R. 595); and examinations showed cervical tenderness, neck pain, and other positive findings (A.R. 610).

Plaintiff points to other evidence showing that her pain continued after surgery and throughout treatment. Doc. 14 at 22. For example, in 2015, Plaintiff received invasive hip injections in January, February, April, August, and December (A.R. 1167; 1195; 1264; 1305; 1356), and again in June and August 2016 (A.R. 1414; A.R. 1430-31). In February 2015, a spinal neurostimulator trial was ordered because of ongoing pain (A.R. 1236), and in August 2015, Plaintiff reported pain in her lumbar spine, right hip, right leg, and pain in both knees (A.R. 1298).[2]

---

[2] Plaintiff's cited procedures occurred after her date last insured. Just as evidence of Plaintiff's condition before the alleged onset date is relevant to evaluation of the relevant

Substantial evidence fails to show sustained improvement of Plaintiff's pain with treatment as the ALJ concluded. Rather, the record shows that Plaintiff experienced some temporary relief but, overall, reported ongoing and recurring pain. Most of the ALJ's cited records supporting improvement predate Plaintiff's alleged onset of disability. Although these records are relevant and might tend to show some successful treatment in the past, the record after August 2011 shows – as Plaintiff argues – ongoing pain despite treatment, and only temporary relief, if any. Moreover, some improvement in some areas does not disprove that disabling symptoms remain, and the ALJ cited no evidence that Plaintiff was malingering or that improvement in a few areas rendered her capable of working. *Cf. Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). The ALJ's selective citations to temporary relief are not, given the full record and Plaintiff's history of ongoing pain, a convincing reason to discredit her symptom testimony.

### 3. Third Reason: Treatment History and Objective Evidence.

"Pain of sufficient severity caused by a medically diagnosed 'anatomical, physiological, or psychological abnormality' may provide the basis for determining that a claimant is disabled." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (citing 42 U.S.C. § 423(d)(5)(A); *Bunnell v. Sullivan*, 947 F.2d 341, 344-45 (9th Cir. 1991)). "Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (citation and alterations omitted); *see Smolen*, 80 F.3d at 1282 ("The claimant need not produce objective medical evidence of the pain . . . itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.") (citing *Bunnell*, 947 F.2d at 345-48); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about

period, so too is evidence following the date last insured. *Cf. Taylor v. Comm'r Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011); *Lester*, 81 F.3d at 832.

the effect your symptoms have on your ability to work solely because the objective medical evidence does not substantiate your statements."); *see also* SSR 95-5p, 1995 WL 670415, at *1 (Oct. 31, 1995) ("Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, careful consideration must be given to any available information about symptoms.").

Unless the ALJ "makes a finding of malingering based on affirmative evidence thereof, [she] may only find [the claimant] not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citing *Smolen*, 80 F.3d at 1283-84). "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Reddick*, 157 F.3d at 722 (quoting *Lester*, 81 F.3d at 834); *see Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (same).

The ALJ cited several exhibits to support her findings that Plaintiff's treatment history, clinical signs, and the objective evidence were inconsistent with Plaintiff's alleged symptoms. *See* A.R. 22-24. Plaintiff does not appear to challenge every finding. *See* Doc. 14 at 22-23.

Plaintiff first contests the ALJ's finding that her "clinical signs on exam" were inconsistent with her symptom testimony. *Id.* at 22. The ALJ found that Plaintiff "often exhibited normal range of motion throughout the spine and extremities, with normal neurological findings, normal muscle strength, and normal tone." A.R. 23. The ALJ concluded that this evidence "suggests a higher level of functioning and is not consistent with testimony that [Plaintiff] spends all day in bed [because one] would expect to see some evidence of weakness in the extremities were that the case." *Id.* As Plaintiff notes, however, the ALJ cited no medical evidence for her conclusion about the significance of the cited evidence. "It is beyond the scope of the ALJ's authority to offer such a medical opinion based solely on [her] own personal speculation" about the meaning of the medical evidence. *Rawa v. Colvin*, 672 Fed App'x 664, 667 (9th Cir. 2016) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008)). The ALJ could not rely on her lay

speculation about the medical evidence to discredit Plaintiff's spine and back symptoms. This was not a clear and convincing reason.

Plaintiff asserts that the record supports her testimony, citing evidence of tenderness and pain in her feet, ankles, spine, positive trigger points, muscle spasms, painful and limited motion, and her limp.  Doc. 14 at 23 (citing record).  The ALJ acknowledged that Plaintiff's fibromyalgia is severe, but she failed to address portions of the record corroborating the extent and severity of Plaintiff's alleged pain and symptoms.  *See, e.g.*, A.R. 807 ("diffuse tender trigger points through out back and extremities"); A.R. 862 ("signs of swelling, inflammation . . . joint pain and tissue tenderness, asymmetry of musculature, and muscle spasm"); A.R. 1092 ("complaining of left knee pain and swelling" and "pain is 5/10, achy and dully."); A.R. 1107 ("diffuse myofascial tenderness" and "[c]ervical and lumbar paraspinal tenderness").  While the ALJ is tasked with weighing the evidence and making credibility determinations, she cannot ignore "competent evidence in the record that suggests an opposite result."  *Gallant v. Heckler*, 753 F.2d 1450, 1455-56 (9th Cir. 1984).  This is especially true in cases of fibromyalgia, where "the symptoms . . . 'wax and wane,' and a person may have 'bad days and good days.'"  *Revels*, 874 F.3d at 663.

In fact, the ALJ acknowledged that Plaintiff's "symptoms of pain and fatigue likely wax and wane."  A.R. 24.  The ALJ nonetheless found Plaintiff's pain and fatigue insufficient for disability because "examination notes fail to document more restrictive physical conditions such as nerve root or spinal cord compromise, decreased sensation or strength in the bilateral upper or lower extremities, electrodiagnostic evidence of radiculopathy, gait instability and/or spasticity and swelling of the extremities."  *Id.*  But the ALJ failed to address whether such findings are even possible in a patient with fibromyalgia, which is a "condition that involves 'chronic pain throughout the body.'"  *Revels*, 874 F.3d at 663 (quoting *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004)).  Indeed, the Ninth Circuit has noted that "[f]ibromyalgia is diagnosed entirely on the basis of patients' reports of pain and other symptoms, and there are no laboratory tests to confirm

the diagnosis." *Id.* (quotations marks and citations omitted). "[A] person with fibromyalgia may have muscle strength, sensory functions, and reflexes that are normal." *Id.* (same). The Court cannot conclude that the absence of the kinds of evidence described by the ALJ is a clear and convincing reason to discredit Plaintiff's symptom testimony.[3]

Plaintiff also cites repeated notations of active synovitis in examinations, contrary to the ALJ's finding that the evidence showed no "significant synovitis." *Id.*; A.R. 24.[4] The ALJ cited no medical evidence indicating the level of synovitis Plaintiff would display given her alleged symptoms. A.R. 24. And, as Plaintiff notes, the evidence shows a documented history of active synovitis, as well as arthritis and fibromyalgia-related pain and symptoms. *See, e.g.*, A.R. 988 (noting synovitis, diagnosing arthritis and fibromyalgia); A.R. 991 (noting synovitis and chronic myofascial pain syndrome); A.R. 1091 (noting active synovitis and inflammatory arthritis). The ALJ impermissibly speculated on the medical evidence by disregarding Plaintiff's arthritic and joint-pain symptoms for lack of "significant synovitis." This was not a clear and convincing reason.[5]

## V.     Scope of Remand.

The ALJ erred in discrediting Plaintiff's symptom testimony and the opinions of Drs. Olubi and Naranja. Plaintiff contends that, crediting this evidence as true, the Court

---

[3] The ALJ concluded that a reduction to sedentary exertional level was sufficient to accommodate any symptoms from Plaintiff's fibromyalgia. The only stated reason for this reduction level was "plaintiff's ability to perform a fairly significant range of activities of daily living." As the Court discusses above, the ALJ erred in finding that Plaintiff performs a significant range of activities and discrediting Plaintiff's symptom testimony for that reason. A.R. 24.

[4] Plaintiff argues that the ALJ failed to "reconcile findings at various time-limited appointments with [Plaintiff's] functioning over an eight-hour workday," but makes no specific arguments about particular symptoms. Doc. 14 at 23.

[5] The ALJ cited several reasons for discrediting Plaintiff's symptoms with respect to her mental health. A.R. 24-25. Plaintiff develops no arguments challenging the ALJ's bases for discrediting Plaintiff's mental symptoms, and instead focuses only on evidence of and arguments about her physical symptoms. *See* Doc. 14 at 21-24. Plaintiff's only citation to the part of the ALJ's opinion that discusses mental symptoms is in the context of Plaintiff's argument about her physical symptoms. *Id.* at 14. The Court may only review issues raised by the challenging party. *See Lewis*, 236 F.3d at 517 n.13.

must remand for an award of benefits. Doc. 14 at 25. Defendant counters that the appropriate remedy is a remand for further proceedings. Doc. 16 at 14.

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Under a "rare exception" to this rule, the Court may remand for an immediate award of benefits after conducting a three-part inquiry:

> The three-part analysis ... is known as the "credit-as-true" rule. First, we ask whether the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. Next, we determine whether there are outstanding issues that must be resolved before a disability determination can be made, and whether further administrative proceedings would be useful. When these first two conditions are satisfied, we then credit the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability.

*Id.* (internal quotation marks and citations omitted).

The first step is satisfied. The ALJ failed to provide legally sufficient reasons for discounting the opinions of Drs. Olubi and Naranja and Plaintiff's testimony. Applying step two, the Court concludes that no outstanding issues must be resolved before a disability determination can be made. At the hearing, the following exchange occurred with the vocational expert:

> Q  Okay. This is based on 13F [Dr. Olubi's opinion]. . . . Can an individual with those limitations perform any of [Plaintiff's] prior relevant [work]?
>
> A  . . . No, they can't return back to previous work and there'd be no work in the open labor market.
>
> Q  And in 2012, it was described that [Plaintiff] would have severe limitations and activities of daily living. If that was 15 percent off task, would that allow [Plaintiff] to maintain work in the national economy?
>
> A  No, ma'am.

Q    And, let's see, 19F [Dr. Naranja's opinion], . . . . Could the individual work – or, excuse me, perform any of [Plaintiff's] prior relevant work?

A  No, ma'am.

Q  Is there work in the national economy?

A  No, ma'am.

A.R. 67-68.

Applying step three, the Court finds that if the opinions of Drs. Olubi and Naranja and Plaintiff's testimony are credited as true, no doubt exists as to Plaintiff's disability. The vocational expert was clear in her testimony that Plaintiff could not work with the pain conditions and limitations that she and Drs. Olubi and Naranja described.  The Court will remand for an award of benefits.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is vacated and the cased is remanded for an award of benefits.  The Clerk shall enter judgment accordingly and **terminate** this action.

Dated this 18th day of January, 2019.

David G. Campbell
Senior United States District Judge